Thank you. Whenever you're ready, Ms. Bush. Christine Bush on behalf of the appellant. May I please reserve three minutes for rebuttal? Yes. May it please the Court, Ira Green is here appealing a series of errors relating to three separate areas that we briefed in the briefs. The motion for new trial that was denied by the district court, the failure to give two separate jury instructions, defamation per se, and the justification defense instruction that was given. And finally, the series of evidentiary issues in terms of testimony that was admitted. Turning to the first point, which is the denial of the motion for new trial, that's also broken into three points. First, we raised the issue of the failure to pull the jury. That's under Rule 48C. After the jury came back and handed back the verdict slip, the district court declared that the jury verdict was in order. The jury and the foreperson read the jury verdict. But because the way the jury instructions were set out and the way the jury verdict form was structured, the jury didn't answer the second question if they didn't find liability. So when it came to read question one, and the answer was no, the district court then led the jury foreperson to question three, and the answer was no. And then the district court led the jury foreperson to question five, and the answer was yes. The district court then went on and informed the jury that this concludes your service. The jury remained in the box, which is roughly where the clerks are sitting, and the judge thanked the jury. And then the district court said you are now free. You can speak freely about it as you wish, no restrictions whatsoever. You can go on Facebook. You can tweet about it. At this point, counsel for Ira Green was standing. The judge asked if anyone would like the jury poll. We said yes. We also said we would also ask that the district court read the answer to question number six, which hadn't been read. And so the court took the slip back from the clerk who had held it, handed it back to the foreperson, and the jury foreperson responded we had no damages. At that point, the district court responded great. The verdict form reads none. I apologize, Mr. Scott. Everything else I said just applies. You're free to go. And the jury left with Marshall. The jury was never polled. Now, except that chronology omits the fact that the judge then asked the attorneys whether there was anything else, and no one, including counsel for Ira Green, said anything. That was after the jury had left, sir. No, but the jury wasn't going anywhere. The jury had agreed on the record to remain in the jury room to talk with the judge, as is the judge's practice. That's what appears on the record. So the jury could have been brought back into the box at that point. The jury had walked out of the courtroom. The court is correct. The jury had walked out of the courtroom with the Marshall. Yes, but they could have been brought back into the box. And my question is this. Yes, counsel asked for a jury poll, but it was a two-part request. Asked for a jury poll and asked to have the verdict reading completed, which inadvertently had not been done. The judge complied with the second part of it. In the course of doing so, pretty obvious that everyone then forgot about the jury poll question. And my question is, isn't there some obligation in that type of circumstance for counsel to reassert his position? He asked for two things. The judge did one. You've now got the complete verdict poll. And I would think that if you really wanted the jury poll, you would have then reminded the court or done something, not just sit there and mute when the court asked if counsel had anything further. There are a couple of points to that question. And the first was the characterization that it was obvious that the court was distracted or confused. That's simply not the case. I don't believe I said that. What I said is that it is obvious to me from reading the record that everyone forgot about the jury poll request. Everyone meaning the district judge, the lawyers for the parties. But that wasn't obvious, sir. You're in the heat of the moment, and the court, who was an experienced trial lawyer before you took the bench, reads the answer to question six, says, I'm sorry, Mr. Scott, you're free to go. It wasn't obvious that the court had forgotten. And Rule 48C, which was amended in 2009, requires us to stand up once. And there's a reason for that. And that is because the jury is in the box. They're watching us do this. And for the same reason I would be sanctioned if I stood up and gave long-speaking objections, or if I objected to the instructions when the jury was in the box, if I stood up again. But you wouldn't be sanctioned if you responded when the district court said, does counsel have anything further? Except that you do, because if the jury is still in that box, and I do, and I stand up a second time, then they're wondering what's really going on.  And the court's point, why didn't we say something after they had gone out that door? Because now the jury's in the hallway tweeting or doing whatever they've done. They're free to go. They've talked to each other. They've shrugged. Who knows what's going on? They followed the court's instruction. You're free. And then they're pulled back in through that door and said, oh, Ira Green really wants to know from each one of you whether this is your verdict. That verdict, that jury as composed before it left that door, is not the same. And that is where you're seeing the circuits go, the cases that have interpreted this, and there are not many. When you let a jury go out that door, it changes. Counsel, I'd like to follow up a little bit. It did appear to me from the record perfectly obvious that the judge forgot. What's the other possibility, that the judge purposefully was denying it, although he said he would pull the jury? What are the other possibilities? That he just wasn't doing it, that he was denying it. He either forgot or he denied it. But you have to look at it in the framework. The court, when our motion for new trial was denied. Is it fair to read this record and conclude that the judge was denying it after saying that he would pull the jury? Is that a fair reading of the record? I think it is. Because he didn't give it to us when we asked for it. And I think more. You asked for two things. You asked for the reading of the sixth answer. It seems to me that when the judge said, is there anything else? All you had to do was say, yes, we'd like the jury pulled. And that didn't happen. There's no question that that didn't happen. But the question becomes then, in the context of the motion for new trial, the judge torqued the focus and said that we waived the right to the jury. Well, that's possible. If the judge forgot and you purposefully stood mute, then I would consider that to be a waiver. I don't read the record that way. I read it as a forfeiture. Frankly, that's how it appears to me. And so I'm trying to give you an opportunity to convince me why I'm wrong about that. It sure looks to me like everybody forgot. A waiver has to be. I just said I concede that it's probably not a waiver. Tell me why it's not a forfeiture. In terms of a forfeiture, even if it were a forfeiture, that's when we get into the plain air standard. Okay. So then you look at what happened. There clearly was a failure to pull the jury. There's no question that that happened. It was also clear that it affected the substantive rights of the parties. Here, I regreen. Because you see all this post-trial briefing that goes to the question of whether there was an inconsistency between the jury verdict in questions five and question six, and what did the jury mean when it answered five on the question of liability and none on question six. And all of that would have been obviated had we had the opportunity to pull the jury. And that's just the defamation claim. Sure, it would have been much neater, but you can't say that that affects the party's substantial rights unless you're prepared to say that it's likely that the outcome would have been different. It's likely that the jury poll would have resulted in some juror saying, no, that's not our verdict. And there's absolutely nothing that points to that. I respectfully disagree with the court. The right to pull a jury is a substantial right. And the point of the jury poll. That's true. But you're overlooking plain error review. You're arguing, contrary to what the appellee is arguing, that we shouldn't apply a harmless error test. All right? That may be right. All right? But that's not the same inquiry that we make on plain error. On plain error, there's got to be something about the error where we can say that it is likely that this particular error, even though the objection wasn't pressed when it should have been, has affected the defendant's substantial rights. And that's been defined in our case law as meaning that it was likely that the outcome would have been changed. And you see that here. Because we have a situation where you have a yes on a liability and a no on a damages. And that's only with respect to the defamation claim. Like I said before. But that's, I suggest, is a different part of your argument. I suspect that that's a perfectly consistent and proper verdict. Because under Rhode Island law, which I used to know something about, unless there's defamation per se, damages are an element of a defamation cause of action. And the jury had found no damages. So that's, now you've got another issue on appeal as to whether the district court acted correctly in refusing to submit the defamation per se claim to the jury. But it's clear that he did not. We do, sir. And in terms of the substantial right that was affected, what happened later, one week later when we got the call from the district court on September 25th, to talk about the judgment that was entered on Rule 58. On September 26th, MSS filed its motion to alter or amend the judgment. And following that, the judge went through this analysis and under Rule 60A, entered an amended judgment. And so it did affect our substantial right because it began, the cascade arguably began back with the jury instructions where we didn't get the defamation per se. It cascaded down to the trial when we were denied the right, or the jury poll did not happen. Then we go a week later and we have the situation where we get the call from the district court saying that I think there's a clerical error. I need to amend the judgment. We object. MSS files a brief under Rule 59E. The district court analyzes it under Rule 60A, which goes to a clerical mistake, which it clearly was not. And then, based on the amended judgment, declares MSS to be the prevailing party and awards costs. And so there is a cascade, but an effect on our substantial rights. Good morning, Your Honors. Brian Newberry for Military Sales and Service. Just briefly on the issue of the jury poll, I think Your Honors read the record correctly. The judge is actually the one who raised the question of whether the parties won the jury poll. He wasn't really asked for it. He said, does anybody want the jury poll? Plaintiffs said they would. They also asked to have the last question read, as you pointed out, and it's obvious from the record. The judge, if you look at the jury slip, it was on the second page. He simply forgot to read it. So he then read it. He obviously forgot about the jury poll request. There were three lawyers for the plaintiffs sitting in the room. All you had to do was say, Your Honor, excuse me. That's all you had to do. So as far as I'm concerned, that issue should be set aside. As to the issue of the clerical area, just because it's been brought up with the defamation question, just so you're correct, the renowned Supreme Court defamation damages are an element of defamation. And, frankly, the jury slip probably could have been a little bit cleaner. Nobody objected to it. We didn't object to it. They didn't object to it. But maybe the question shouldn't have been, was there defamation, yes or no, and then what with the damages? Because as you read the record, and I think we briefed this very extensively, it's quite obvious that there was a single email that, for purposes of this appeal, we'll concede was not accurate. But the question ultimately was, did it lead to anything? The record is replete with evidence to the contrary, that, in fact, no damages flowed. And the jury most likely came to the conclusion, yes, the statement wasn't true, so they checked the yes box. But if there's no damages entered, since damages are an element of defamation, the judgment on defamation count, I believe it was three, should have been in favor of MSS. The clerk enters judgment. As you know, judgment got entered, if you look at the original judgment, in favor of Ira Green on defamation. But that really was not accurate under the law. So the judge recognized that sua sponte. We were looking at that, too, and we filed a motion and went from there. So I think it's clear that there was a clerical error, truly, in the true sense of the term, and the judge made the correct decision. Clearly, the jury knew what they were doing. I don't see any question about that. There's been a lot of issues raised in the briefing. I think we've briefed them extensively. Those are the only issues that have come up in my sister's argument here. So I'm prepared to rest on my papers unless you have questions. I have plenty of time, but I don't know if you folks have any questions. Thank you. Thank you. Turning to the point that counsel just made about damages and defamation and to the court's earlier point about Rhode Island law. I'm sorry. No, you may start. I'm so sorry. I didn't mean to start. I wasn't. No, no, that's all right. Just addressing the point that MSS's counsel just made about damages and how the jury clearly found that we hadn't met the elements of the defamation claim. So that's why the amended judgment was proper. That misses a critical point in the jury instructions that were given by the court, which is that, and it's found on page 824, if you find that MSS is not liable, you will not consider the question of damages. And that's why it's so important that they filled out number one, not number two. They filled out number three, not number four. They filled out number five, and they filled out number six. They found MSS liable. That's what the problem is when you start cascading down to the amended judgment, because there was not a clerical error. The deputy clerk properly entered that judgment in favor of Ira Green on that defamation count as the jury was instructed under Rule 58. There was no special verdict form. That was argued in their brief. But a week later, the judge took it away. And that was not within the court's discretion to do that under Rule 68, nor could the court have done it under Rule 59E, which MSS didn't even reference, much less brief below. So there was no basis for entering this amended judgment. I'm struggling with that argument, Ms. Bush. You don't seem to be disagreeing that under Rhode Island law, there are elements to a defamation claim, and in order to prevail, the plaintiff has the burden of proving all of those elements, and that one of those elements is damages. Yes. And the jury verdict, I don't think, can be read any other way than to say that there were no damages here, no damages proven here. It does read none, Your Honor. I'm sorry. Okay. So I then struggle with the notion of why the clerk, faced with that form, finding of none as to one of the essential elements of the claim, should enter judgment for the plaintiff rather than for the defendant. That seems to me, if I was the trial judge and that was my courtroom clerk, I would say to her, no, that's not right. I mean, that does seem to me to be erroneous. But that takes some thinking. That takes some going through the elements of what is in defamation versus what is in defamation per se, and what was the jury doing, and why did it check five as yes and then write in none, and that is not within the scope of 60A under the case law of Bowen. It's too broad an analysis. I don't see why it's too broad, because to do what the clerk did doesn't take any thinking at all. That's reflexive to the fact that one of the questions was answered favorably to the plaintiff. Yes, it takes some thinking to correct the mistake, but it doesn't obviate the nature of the mistake. I respectfully disagree for the reasons set forth in the brief, sir.